UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY, | ) ) ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | 3:16-CV-3180-G |
| VS. | ) | |
| | ) | |
| JUAN FRANCISCO CHAJON, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the plaintiff's motion for summary judgment (docket entry 23) and the motion to allow discovery under Rule 56(d) filed by the defendant, Juan Chajon ("Chajon") (docket entry 27). For the reasons stated below, the plaintiff's motion is granted and Chajon's motion is denied.

### I. BACKGROUND

The plaintiff, The Cincinnati Specialty Underwriters Insurance Company ("CSUIC"), brought this action seeking a judgment declaring that it has no duty to

defend or indemnify the insured, Chajon, in a pending state-court negligence action.[1]
*See* Original Complaint for Declaratory Judgment ("Complaint") ¶¶ 8-12 (docket entry 1). On May 9, 2014, CSUIC issued a one-year general liability insurance policy to Chajon, who operates a painting business.[2] See *id.* ¶ 11. On January 4, 2015, Jose Manual Lopez ("Lopez") and Samuel Mejia ("Mejia") were electrocuted and seriously injured while working for Chajon. *Id.* ¶¶ 9-10.

The plaintiffs in the state-court action, Lopez and members of his family, and the intervenor, Mejia, assert claims for negligence and gross negligence against Chajon and are seeking monetary damages. CSUIC's Appendix in Support of Its

---

[1]     *Erika Yanez, Individually and as Next Friend of Jose Manuel Lopez, et al. v. N.E. Development, LLC, et al.*, No. DC-15-01388, pending in the 68th Judicial District Court of Dallas County, Texas.

[2]     Chajon is named as the "Insured" under the policy. The policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. *However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.* We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

CSUIC's Appendix at 61 (emphasis added).

Motion for Summary Judgment ("CSUIC's Appendix") at 7, 28-29 (docket entry 25). Specifically, in the state petitions, Lopez and Mejia allege that Chajon failed to provide them with a safe work area and failed to warn them of nearby high-voltage power lines. See *id.* Chajon has requested defense and indemnity from CSUIC under the policy. *See* CSUIC's Amended Brief in Support of Its Motion for Summary Judgment ("CSUIC's Brief") at 1-2 (docket entry 26).

CSUIC commenced this action on November 14, 2016, seeking a declaration that it has no duty to defend or indemnify Chajon. Complaint ¶ 12. On March 16, 2017, CSUIC filed the instant motion for summary judgment. CSUIC's Motion for Summary Judgment (docket entry 23). On April 6, 2017, Chajon filed a motion to allow time for discovery under Rule 56(d), and Lopez and Mejia filed responses to CSUIC's motion for summary judgment. Chajon's Motion to Allow Time for Discovery Under Rule 56(d) (docket entry 27); Lopez's Response to CSUIC's Motion for Summary Judgment (docket entry 32); Brief in Support of Lopez's Response to CSUIC's Motion for Summary Judgment ("Lopez's Response Brief") (docket entry 33); Mejia's Response to CSUIC's Motion for Summary Judgment (docket entry 29); Brief in Support of Mejia's Response to CSUIC's Motion for Summary Judgment ("Mejia's Response Brief") (docket entry 30). On April 20, 2017, CSUIC filed replies to Lopez and Mejia's responses. CSUIC's Reply to Lopez (docket entry 36); CSUIC's Reply to Mejia (docket entry 37). Lastly, on April 27,

2017, CSUIC filed a response to Chajon's Rule 56(d) motion. CSUIC's Response to Chajon's Motion Under Rule 56(d) (docket entry 38). The motions are now ripe for decision.

## II. ANALYSIS

### A. Legal Standards

#### 1. *Summary Judgment*

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[3] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is

_____

[3]     Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

### 2. *Insurance Policy Interpretation Under Texas Law*

The parties agree that Texas law applies to this diversity case. CSUIC's Brief at 5; Mejia's Response Brief at 5; Lopez's Response Brief at 7; see generally *Erie Railroad Company v. Tompkins*, 304 U.S. 64 (1938). Texas courts interpret insurance

contracts according to the "rules of interpretation and construction which are applicable to contracts generally." *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Id.* (citation omitted). In determining the intent of the parties, the court construes the policy to give effect to each of its terms and to avoid rendering any term meaningless. *Ideal Mutual Insurance Company v. Last Days Evangelical Association, Inc.*, 783 F.2d 1234, 1238 (5th Cir. 1986) (citation omitted).

In construing a contract, the court must determine whether its meaning is ambiguous. "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *CBI Industries*, 907 S.W.2d at 520. A written contract is ambiguous if its language "is subject to two or more reasonable interpretations" but is not ambiguous if it is "so worded that it can be given a definite or certain legal meaning." *Id.* Mere disagreement between the parties about the correct interpretation of the term will not render the term ambiguous, nor will it transform the issue of law into an issue of fact. *D.E.W., Inc. v. Local 93, Laborers' International Union of North America*, 957 F.2d 196, 199 (5th Cir. 1992) (citations omitted).

Where a policy term is ambiguous, the court will construe that term in favor of the insured. *Toops v. Gulf Coast Marine Inc.*, 72 F.3d 483, 486 (5th Cir. 1996) (quoting *Adams v. John Hancock Mutual Life Insurance Company*, 797 F. Supp. 563, 567 (W.D. Tex. 1992), *aff'd*, 49 F.3d 728 (5th Cir. 1995)). In addition, when construing a policy term that excludes or limits coverage, the court must adopt any reasonable interpretation of the exclusion urged by the insured, even if the interpretation of the insurer appears more reasonable or a more accurate reflection of the parties' intent. *Id.* These rules of construction, however, apply only when the terms of the policy are "susceptible to several reasonable constructions." *Ranger Insurance Company v. Bowie*, 574 S.W.2d 540, 542 (Tex. 1978) (citations omitted).

### 3. *Duty to Defend*

Texas follows the "eight-corners" rule of insurance contract interpretation. See, *e.g.*, *GuideOne Elite Insurance Company v. Fielder Road Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006). This rule instructs courts to determine whether an insurer has a duty to defend based solely on the language contained within the four corners of the insurance policy and the allegations contained within the four corners of the plaintiff's pleadings. *Allstate Insurance Company v. Disability Services of the Southwest, Inc.*, 400 F.3d 260, 263 (5th Cir. 2005); *National Union Fire Insurance Company of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam). If the pleadings allege facts stating a cause of action that potentially

falls within the insurance policy's scope of coverage, the insurer has a duty to defend. *Liberty Mutual Insurance Company v. Graham*, 473 F.3d 596, 600 (5th Cir. 2006). The duty is determined based on the presumption that the allegations in the plaintiff's pleadings are true. *Disability Services of the Southwest*, 400 F.3d at 263; *Fielder Road Baptist Church*, 197 S.W.3d at 308. The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies. *Trinity Universal Insurance Company v. Employers Mutual Casualty Company*, 592 F.3d 687, 691-92 (5th Cir. 2010). "If an insurer has a duty to defend its insured against any portion of the underlying suit, then the insurer is required to defend the entire suit." *General Star Indemnity Company v. Gulf Coast Marine Associates, Inc.*, 252 S.W.3d 450, 455 (Tex. App.--Houston [14th Dist.] 2008, pet. denied).

A pair of countervailing considerations guides the court's review of the facts alleged within the four corners of the underlying pleadings. On the one hand, "the insurer's duty to defend is limited to those claims actually asserted in an underlying suit" and does not extend to "a claim that might have been alleged but was not, or a claim that more closely tracks the true factual circumstances surrounding the third-party claimant's injuries but which, for whatever reason, has not been asserted." *Pine Oak Builders, Inc. v. Great American Lloyds Insurance Company*, 279 S.W.3d 650, 655-56 (Tex. 2009). "If the petition only alleges facts excluded by the policy, the insurer is

not required to defend." *Id.* at 655 (citation and internal quotation marks omitted). The court must not "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Gore Design Completions, Limited v. Hartford Fire Insurance Company*, 538 F.3d 365, 369 (5th Cir. 2008) (citation and internal quotation marks omitted). On the other hand, the factual allegations that are contained within the pleadings must be liberally construed: "If the petition does not state facts sufficient to bring the case clearly within or outside the insured's coverage, the insurer is obligated to defend if *potentially* there is a claim under the complaint within the coverage of the insured's policy." *Gulf Coast Marine Associates*, 252 S.W.3d at 454 (citing *Merchants Fast Motor Lines*, 939 S.W.2d at 141) (emphasis in original). A court may draw reasonable inferences from the pleadings that trigger an insurer's duty to defend, *id.* at 456, and doubts about whether "'the allegations of a complaint against the insured . . . [are] sufficient to compel the insurer to defend the action . . . will be resolved in [the] insured's favor.'" *Merchants Fast Motor Lines*, 939 S.W.2d at 141 (quoting *Heyden Newport Chemical Corporation v. Southern General Insurance Company*, 387 S.W.2d 22, 26 (Tex. 1965)). The net result is that insurers are advised to chart a cautious course: "When in doubt, defend." *Gore Design Completions*, 538 F.3d at 369.

B. <u>Application</u>

1. *Whether the Action Should Be Stayed*

Lopez contends that the court should stay the case until the state-court action concludes. Lopez's Response Brief at 4. The Declaratory Judgment Act "confers discretion on the courts rather than an absolute right on a litigant." *Sherwin-Williams Company v. Holmes County*, 343 F.3d 383, 389 (5th Cir. 2003) (quoting *Wilton v. Seven Falls Company*, 515 U.S. 277, 287 (1995)). The Fifth Circuit has identified seven nonexclusive factors district courts should consider when deciding whether to adjudicate, dismiss, or stay a declaratory-judgment action: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist in allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is a convenient forum for the parties and witnesses; (6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *St. Paul Insurance Company v. Trejo*, 39 F.3d 585, 591 (5th Cir. 1994).

As to the first factor, courts look to whether the lawsuits are parallel, involving the same parties and the same issues. *Canal Insurance Company v. XMEX Transport, LLC*, 1 F. Supp. 3d 516, 526 (W.D. Tex. 2014). Here, the court concludes that the two lawsuits are not parallel because the two actions do not involve the same parties or the same issues. First, CSUIC is not a party to the state action. Moreover, the state suit involves Chajon's potential tort liability to Lopez and Mejia, and the federal suit pertains solely to CSUIC's duty to defend Chajon. The lack of a parallel proceeding in a different forum "weighs strongly against" staying the case. See *Sherwin-Williams*, 343 F.3d at 394.

As to factors two and three, the filing of every lawsuit requires forum selection. "Federal declaratory judgment suits are routinely filed in anticipation of other litigation. . . . Merely filing a declaratory judgment action in a federal court with jurisdiction to hear it . . . is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Id.* at 391. The court further concludes that the remaining *Trejo* factors are either inapplicable or do not militate in favor of staying the case. Therefore, Lopez's request to stay the action is denied.

### 2. *Whether CSUIC Has a Duty to Defend Chajon*

CSUIC contends that the policy specifically excludes coverage for the allegations against Chajon in state court. CSUIC's Brief at 1-2. The exclusion provisions in the policy state:

## EXCLUSION -- BODILY INJURY TO CONTRACTORS'
## OR SUBCONTRACTORS' EMPLOYEES

\* \* \*

"Bodily injury" to:

    **a.**    Any "employee"[4] of any:

        **(1)** Contractor; or

        **(2)** Subcontractor; and

            **(a)** Arising out of and in the course of

                **1)** Employment; or

                **2)** Performing duties related to the conduct of an insured's business or the business of a contractor or subcontractor. . . .

\* \* \*

## EXCLUSION -- EMPLOYER'S LIABILITY

"Bodily injury" to:

---

[4]     The policy defines "employee" as "any person who is hired for wage, salary, fee or payment to perform work. 'Employee' includes any leased worker or temporary worker, loaned worker, or 'volunteer worker.'" CSUIC's Appendix at 83.

    Furthermore, the policy defines "volunteer worker" as "a person who is not your 'employee,' and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you." *Id.* at 76.

1. An "employee" of the insured arising out of and in the course of:

    a. Employment by the insured; or

    b. Performing duties related to the conduct of the insured's business; or

2. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph 1. above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

CSUIC's Appendix at 83-84.

The state-court petition alleges that:

The N.E. Entities contracted with ACN to provide construction services. The N.E. Entities also contracted with D. Torres Construction to assist with the completion of the project. D. Torres Construction was contractually responsible for completing exterior projects at the Construction Site. D. Torres Construction subcontracted certain projects to Juan Francisco Chajon *dba* Poncho Painting (hereinafter "Chajon"), including projects to paint various aspects of the Anatole at Westinghouse Apartment Complex. In turn, Chajon contacted a site foreman to supervise on behalf of Poncho Painting. Plaintiff Jose Lopez and Samuel Mejia were performing work for Chajon, including the painting and caulking work. Samuel Mejia witnessed Jose Lopez's electrocution. Each of these contractors and subcontractors were negligent by, *inter alia*, failing to warn Jose Lopez of the close proximity of the high-voltage lines, by not providing to Jose Lopez a plastic or fiberglass ladder that would not conduct electricity, and by failing to ensure a safe work environment at the Construction Site.

*Id.* at 7, 28-29.

a.  Applying the "Eight-Corners" Rule

Adhering to the "eight-corners" rule, the issue before the court is whether Lopez and Mejia were Chajon's "employee[s]" at the time of their injuries.  If Lopez and Mejia fall within the policy's definition of "employee," then the "Employer's Liability" exclusion precludes coverage.  CSUIC contends that, although the fifth amended petition does not expressly state that Lopez and Mejia were employees of Chajon, Lopez and Mejia fit within the policy's broad definition of "employee."  *See* CSUIC's Brief at 9-11.  Lopez and Mejia, on the other hand, contend that there is a dispute of fact as to whether Lopez and Mejia were "employee[s]" under the policy and thus excluded from coverage, or whether they were independent contractors.  Lopez's Response Brief at 10, 13-14; Mejia's Response Brief at 4-5.

In determining the employment status of an injured worker, courts look to whether the state-court complaint specifically alleges the worker's status or whether it contains sufficient factual allegations to classify the worker under the policy.  *Castle Point National Insurance Company v. Lalo*, 642 Fed. App'x 329, 331 (5th Cir. 2016) ("[C]ontrary to the district court's determinations, Lalo's state-court complaint contains no allegation that Lalo was an employee of B.S. Trucking; nor does it contain sufficient factual allegations to classify Lalo as an employee under the policy.").  For example, in *Nautilus Insurance Company v. Home Remedy Services, LLC*,

- 14 -

No. CV H-09-3508, 2011 WL 13130886 (S.D. Tex. May 31, 2011), the underlying

petition did not specifically allege that the injured worker was an "employee." *Id.* at

*4. Nonetheless, the court concluded that the insured was an "employee" under the

policy. *Id.* The court first looked to the policy's broad definition of "employee."[5] *Id.*

at *2. Then, the court considered the state-court petition's allegation that the injured

worker was "working for and/or under the direct control" of the insured. *Id.* at *4.

Because this allegation was "consistent with" the broad definition of "employee," the

court held that the injured worker was an "employee." *Id.*

    It is true that the state petitions here do not explicitly use the term "employee"

to describe Lopez and Mejia's employment relationship to Chajon. However, the

state petitions contain sufficient factual allegations to classify Lopez and Mejia as

"employee[s]" under the policy. The petitions allege that Lopez and Mejia were

---

[5]        That policy in in *Nautilus Insurance Company* defined "employee" as

> "any person or persons who provides services
> directly or indirectly to any insured,
> regardless of whether the services are
> performed or where the 'bodily injury' occurs
> including, but not limited to, . . . a
> contractor, a subcontractor, an independent
> contractor, and any person or persons hired
> by, loaned to, employed by, or contracted by
> any insured or any insured's contractor,
> subcontractor, or independent contractor."

*Id.* at *2.

"performing work for Chajon" at the time of their injuries.  CSUIC's Appendix at 7, 28-29.  These allegations are not merely "consistent with" the policy's definition of "employee" as in *Nautilus Insurance Company*, but directly mirror it.[6]  *Compare* CSUIC's Appendix at 7, 28-29 *with* CSUIC's Appendix at 76, 83.  Moreover, it is reasonable to infer that Lopez and Mejia were compensated for their work.  *General Star Indemnity Co. v. Gulf Coast Marine Associates, Inc.*, 252 S.W.3d 450, 456 (Tex. App.--Houston [14th Dist.] 2008, pet. denied) (noting that the "eight corners rule does not require [the court] to ignore those inferences logically flowing from the facts alleged in the petition").  This brings Lopez and Mejia directly within the compensation provision of the policy's definition of "employee."

Despite Lopez and Mejia's insistence, there is no basis for the court to conclude that there is a dispute of fact over whether Lopez and Mejia were independent contractors under the policy.  The state petitions do not use the term "independent contractor" in reference to either Mejia or Lopez as the state-court plaintiff's did in authority cited by Lopez and Mejia.  *See* Mejia's Response Brief at 8

---

[6]     Additionally, the definition of "employee" also includes a "volunteer worker."  The definition of "volunteer worker" includes someone who is not an employee of Chajon, but performs under Chajon's direction.  *See* CSUIC's Appendix at 76.  Here, it is clear that the state petitions allege that Lopez and Mejia were performing work at Chajon's direction.  *Id.* at 7, 28-29 ("[Lopez and Mejia] were performing work for Chajon, including the painting and caulking work.").  Therefore, alternatively, Lopez and Mejia fall under the definition of "employee" because they can be considered "volunteer workers."

(citing *Wellington Specialty Insurance Company v. Ling*, No. CIV.A. 3:08-CV-0738-L, 2009 WL 2136399, at \*3-5 (N.D. Tex. July 17, 2009) (Lindsay, J.) (determining that there was an issue of fact as to the duty to defend when the complaint specifically alleged that the injured worker was an independent contractor)); *see also* CSUIC's Appendix at 7, 28-29.  Moreover, the state petitions do not contain factual allegations to permit the conclusion that Lopez and Mejia were independent contractors.  *See* CSUIC's Appendix at 7, 28-29.  The state pleadings do not provide sufficient information for the court to apply Texas's five-factor test to determine employment status as urged by Mejia.  *See* Mejia's Response Brief at 8-9.  The court cannot "read facts into the pleadings" or "imagine factual scenarios which might trigger coverage."  See *Gore Design Completions, Limited*, 538 F.3d at 369.

Furthermore, both Lopez and Mejia rely heavily on *First Mercury Insurance Company v. Rosenbloom Welding & Fabrication, L.L.C.*, No. 3:12-CV-4374-L, 2014 WL 3809045 (N.D. Tex. Aug. 1, 2014) (Lindsay, J.), for the proposition that summary judgment is inappropriate because the policy does not explicitly exclude independent contractors.  Mejia's Response Brief at 6; Lopez's Response Brief at 14.  It is true that the *First Mercury* court emphasized that the policy's exclusion for *employees* of independent contractors did not exclude independent contractors.  *First Mercury Insurance Company*, 2014 WL 3809045, at \*1.  However, *First Mercury* is inapposite to the situation here for two reasons.  First, as CSUIC correctly contends, the *First*

*Mercury* policy did not define the term "employee." See *id.* at *5. Consequently, the *First Mercury* court resorted to the narrower common law definition of "employee." See *id.* at *4-5 (looking to whether the employer had sufficient control over the worker). It is instructive to note, however, that the *First Mercury* court specifically stated that "[w]hen a term is defined in the policy, that definition controls." *Id.* at *3. Here, the court is bound to apply the policy's broad definition of "employee."

More importantly, in *First Mercury*, the policy's failure to specifically exclude independent contractors was determinative because the state petition specifically alleged that the injured workers were "independent contractors and/or subcontractors of [Defendants] and not employees." *Id.* at *4. Here, as discussed above, there is no indication from the state petition that Mejia or Lopez were independent contractors. Instead, they fall squarely within the definition of "employee." From the facts eligible for consideration under the "eight-corners" rule, it would be unreasonable to infer anything other than that Lopez and Mejia were "employees" of Chajon, as that term is defined in the policy.

b. Exception to the "Eight-Corners" Rule

Lopez and Mejia also contend that evidence they submitted raises an issue of fact as to whether Lopez and Mejia were independent contractors. *See* Mejia's Response Brief at 8-11; Lopez's Response Brief at 9. To consider this evidence, the court must determine whether the "very narrow" exception to the "eight-corners" rule

applies. The Texas Supreme Court implied that courts may consider "extrinsic evidence only when relevant to an independent and discrete coverage issue." *Fielder Road Baptist Church*, 197 S.W.3d at 308. This exception may apply "when it is initially impossible to discern whether coverage is potentially implicated *and* when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Id.* at 309 (quoting *Northfield Insurance Company v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004) (emphasis in original)).

Here, as discussed above, the state petitions almost verbatim quote the policy's definition of "employee" when describing Lopez and Mejia's employment with Chajon. The court cannot conclude that it is initially impossible to determine whether coverage is implicated. See *Shanze Enterprises, Inc. v. American Casualty Company of Reading, Pa*, 150 F. Supp. 3d 771, 778 (N.D. Tex. 2015) (Fitzwater, J.) (declining to apply the exception where the court resolved the issue from the facts alleged in the state-court complaint).

Moreover, not only is it unnecessary to consider the proposed extrinsic evidence, doing so could potentially affect the merits of the state-court action. The state petitions contain allegations of agency against all defendants. *See* CSUIC's Appendix at 14, 35. As such, analyzing the employee-independent contractor dichotomy with the proposed extrinsic evidence could potentially affect "the merits

of the underlying state court case and the theories of liability asserted therein." *James River Insurance Company v. Affordable Housing of Kingsville II, Ltd.*, No. CIV.A. H-11-2937, 2012 WL 1551529, at *5 n.3 (S.D. Tex. Apr. 27, 2012). Therefore, the court declines to apply the narrow exception to the "eight-corners" rule.

### 3. *CSUIC's Duty to Indemnify Chajon*

CSUIC contends that it has no duty to indemnify for the same reason that it has no duty to defend: because the conduct giving rise to the state action is explicitly excluded from coverage under the policy. *See* CSUIC's Brief at 10. A court may decide the duty to indemnify prior to the termination of the underlying litigation if "the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Markel American Insurance Company v. Verbeek*, 657 Fed. App'x 305, 311 (5th Cir. 2016) (quoting *Farmers Texas County Mutual Insurance Company v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). The court concludes that because the policy clearly excludes any coverage for the conduct giving rise to the state-court action, the policy also excludes any duty to indemnify Chajon. See *American States Insurance Company v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) ("Logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify."); *Atlantic Casualty Insurance Company v. PrimeLending*, No. 3:15-CV-1475-D, 2017 WL 951878, at *2 n.4 (N.D. Tex. Mar. 10, 2017) (Fitzwater, J.) ("[T]he same reasons that negate

the duty to defend likewise negate any possibility [the insurer] will ever have a duty to indemnify.").

### 4.  *Chajon's Rule 56(d) Motion*

Chajon moves for relief under Rule 56(d), contending that he has not had adequate time for discovery in order to prepare a response.  Chajon's Brief in Support of His Motion to Allow Time for Discovery Under Rule 56(d) at 1 (docket entry 28).  Chajon avers that CSUIC's motion is premature because it was filed before discovery began and discovery is "likely to reveal facts that will raise a genuine issue of material fact." *Id.* at 7.

> Rule 56(d) provides:
>
> > If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

FED. R. CIV. P. 56(d).  To succeed on a Rule 56(d) motion, the "movant 'must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *McKay v. Novartis Pharmaceutical Corporation*, 751 F.3d 694, 700 (5th Cir. 2014) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)).

Here, Chajon has failed to meet his burden.  As CSUIC correctly contends, CSUIC's duty to defend is determined by the "eight-corners":  the allegations in the state petition and the policy.  *Fielder Road Baptist Church*, 197 S.W.3d at 306. Because the court can decide this motion by adhering to the "eight-corners" rule, any evidence obtained in discovery will not influence this case.  Thus, Chajon's Rule 56(d) motion is denied.

III.  <u>CONCLUSION</u>

For the reasons stated above, CSUIC's motion is **GRANTED** and Chajon's motion is **DENIED**.

**SO ORDERED**.

July 31, 2017.

A. JOE FISH
**Senior United States District Judge**